## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JEREMIAH ADAMS,** | |
| **Plaintiff** | **CIVIL ACTION NO.** |
| **v.** | **Case No.: 25CV05390 - TRJ** |
| **HASBRO, INC.,** | |
| **Defendant.** | |

## BRIEF IN SUPPORT OF DEFENDANT HASBRO, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Hasbro, Inc. ("Defendant" or "Hasbro") hereby submits this Brief in Support of Its Partial Motion to Dismiss Plaintiff's First Amended Complaint, showing this Court as follows:

### INTRODUCTION

Plaintiff Jeremiah Adams ("Plaintiff" or "Adams") seeks injunctive and monetary relief under three purported claims against Hasbro. All three claims center on the allegation that, in creating the interior of certain of its licensed Star Wars® brand helmets (the "Accused Lining"), Hasbro copied an insert that Plaintiff had previously created and sold online, as a stand-alone item for insertion into fan-made

1

"'Star-Wars' themed toy helmets" (the "Adams Insert"). On these grounds, Adams lists claims for copyright infringement (Count I), tortious interference (Count II), and violation of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") (Count III). While all three claims lack merit, Counts II and III fail out of the gate and should be dismissed pursuant to Rule 12(b)(6), for the following reasons.

***First***, as to Count II, Plaintiff fails to state a claim for tortious interference in multiple ways, each of which constitutes independent grounds for dismissal. The operative complaint fails to plausibly allege that Hasbro (1) interfered with a particular contract or an actual business relationship; (2) acted with malice; or (3) by its alleged conduct, proximately caused any harm to Plaintiff. ***Second***, as to Count III, Plaintiff fails to make out a claim for violation of the GUDTPA violation because he does not plausibly allege a likelihood of confusion between his own product and Hasbro's. ***Third***, both Counts II and III should be dismissed because they are preempted by federal copyright law.[1]

---

[1]    Plaintiff's copyright infringement claim (Count I) is unsustainable too. Among other significant problems, Plaintiff cannot establish ownership of a valid copyright in the Adams Insert because—as can be seen in Plaintiff's own exhibits—the Adams Insert is derivative of a product previously sold by Riddell Sports Group (the "Riddell Helmet Lining"). (*See* First Am. Compl. (D.E. #3, ¶ 9 & Ex. C).) Since Adams did not have permission to create a derivative work based on the Riddell Helmet Lining, the Adams Insert is an unlicensed derivative work and, as such, enjoys no copyright protection at all. *See, e.g.*, *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1234 (11th Cir. 2010) ("Latimer's photographs do not qualify for copyright protection if they are derivative works made without [the original artist's] authorization."); *Niang as Next Friend of A.N. v. PhatMojo, LLC*, 1:23-CV-05446-

## FACTUAL ALLEGATIONS

Plaintiff Adams is a "hobbyist" who, among other things, designs and fabricates "inserts" or "liners," including the Adams Insert, and offers them for sale to "hobbyists and others," "for their incorporation into their own customized 'Star Wars'-themed toy helmets." (First Amended Complaint, D.E. #3 ("FAC") ¶¶ 5–6, 8.) Although the FAC does not identify any actual buyers, customers, or "end-users" of the Adams Insert, Plaintiff alleges that the Adams Insert "is sold by Plaintiff to end-users, primarily through social media, online shopping platforms such as Etsy, and similar direct channels." (*Id.* at ¶ 8.)

Defendant Hasbro is a global toy and entertainment company that designs, manufactures, and markets toys, games, and related consumer products. (*Id.* at ¶ 10.) Hasbro's products include a series of wearable Star Wars-brand helmets, which are created and sold pursuant to Hasbro's licensing relationship with Lucasfilm Ltd. (*Id.* at ¶¶ 10, 17). Hasbro uses the Accused Lining on the interior of helmets associated

---

SEG, 2024 WL 5112989, at *4 (N.D. Ga. Sept. 9, 2024) ("If a derivative work unlawfully uses copyrighted material without authorization, the derivative work's author will 'receive no [copyright] protection at all.'") (quoting *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 563 (3d Cir. 2002)). In addition, Plaintiff cannot meet his burden of establishing a causal link between any alleged infringement of the Adams Insert and Hasbro's profits on the Accused Helmets. *See, e.g., Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522-23 (4th Cir. 2003); *Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001). Hasbro will address these and other infirmities with Count I in a motion for summary judgment.

with certain iconic characters from the Star Wars franchise (the "Accused Helmets"). More specifically, the Accused Lining forms the lower rear portion of the inside of the Accused Helmets.

Plaintiff claims to own a registered copyright in the Adams Insert (*id.* ¶ 13) and alleges, on "information and belief," that the Accused Lining constitutes an unauthorized reproduction or derivation of the Adams Insert (*id.* ¶¶ 16–17).

Plaintiff filed this action on September 21, 2025 [ECF No. 1] and filed the FAC on September 24, 2025 [ECF No. 3], bringing against Hasbro supposed claims for copyright infringement (Count I), tortious interference with contractual and business relations (Count II), and violation of the GUDTPA (Count III). (FAC ¶¶ 29–43.) Because the FAC fails to set forth plausible allegations necessary to support claims for tortious interference or a GUDTPA violation, and there is no indication that those flaws could be cured by amendment, the Court should grant Hasbro's Partial Motion to Dismiss and dismiss Counts II and III with prejudice.

## ARGUMENT AND CITATION TO AUTHORITY

### I.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). Courts are not required to accept as true allegations that are merely conclusory or unsupported by factual content. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. A sufficiently pled claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Id.*

Courts analyze whether a state-law claim is properly pled before determining whether it is preempted by federal law. *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1328 (11th Cir. 2017). In order to determine whether a state-law claim is preempted by federal copyright law, this Court must apply a "two-prong test." *Crow v. Wainwright*, 720 F.2d 1224, 1225 (11th Cir. 1983). First, the Court must decide "whether the rights at issue fall within the 'subject matter of copyright' set forth in [17 U.S.C.] sections 102 and 103." *Id.* at 1225–26. Second, the Court must decide "whether the rights at issue are 'equivalent to' the exclusive rights of [17 U.S.C.] section 106." *Id.* at 1226. If the answer to both these questions is "yes," then the claim is preempted. *See id.*

## II.    THE FAC FAILS TO STATE A CLAIM FOR RELIEF UNDER COUNT II FOR SEVERAL REASONS.

Plaintiff has not adequately pled a claim for tortious interference with contractual relations *or* one for tortious interference with business relations. Several

5

necessary elements for any such claim are either completely absent from the FAC or supported only by conclusory allegations or speculation.

Despite being pled together in the FAC, "tortious interference with a contract and business relations are two separate claims" and thus, "require proof of different elements." *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1352 (N.D. Ga. 2017) (citing *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1407 (11th Cir. 1998) ("[T]ortious interference with contract and business relationships state two independent but related claims.")). A claim of interference with contractual rights must be based on the intentional and non-privileged interference by a third party "with existing contractual rights and relations." *Farr v. Daling*, 684 F. Supp. 3d 1322, 1341 (N.D. Ga. 2023) (quoting *Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 834 (2019)). Thus, a contractual interference claim requires a plaintiff to show "the existence of a valid contract." *Griffin v. Turner*, 350 Ga. App. 694, 697 (2019) (quoting *Brathwaite v. Fulton-DeKalb Hosp. Auth.*, 317 Ga. App. 111, 113 (2012)). By contrast, a claim for tortious interference with business relations requires a showing of an existing or prospective business relationship. *See Wilson v. City of Sardis,* 264 Ga. App. 178, 180 (2003) ("A cause of action for tortious interference with business relations encompasses interference with a prospective business relationship as well as existing ones.").

Aside from that, the two types of tortious interference share "certain common essential elements." *Gordon Document Prods., Inc. v. Serv. Techs.*, *Inc.*, 308 Ga. App. 445, 449 (2011); *USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC*, No. 1:20-CV-02490-SCJ, 2021 WL 912258, at *4 (N.D. Ga. Mar. 10, 2021). "In order to prevail on either claim, a plaintiff must show: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or their parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Acousti Eng'g of Fla. v. Jernigan*, No. 1:23-CV-02917-VMC, 2024 WL 4535279, at *7 (N.D. Ga. Aug. 27, 2024). "To establish under the first element that the defendant acted 'without privilege,' the plaintiff must show that 'the defendant was an intermeddler or "stranger" to the [contract or] business relationship at issue.'" *United Scis., LLC v. Kellett*, 368 Ga. App. 690, 695 (2023) (alteration in original) (quoting *ASC Equip. USA v. City Commercial Real Estate*, 303 Ga. App. 309, 313 (2010)).

Ultimately, whether considered separately or in combination, Plaintiff's claims for tortious interference with contractual relations and tortious interference with business relations (FAC ¶¶ 29–37) are insufficiently pled.

**A. Plaintiff Fails to Allege that Any Specific Contract or Business Relationship Exists or Has Been Interfered With.**

    **1.    The contract element of a claim for tortious interference with contract is wholly absent.**

A claim for tortious interference with contractual relations must be dismissed where a plaintiff does not allege interference with "specific contracts." *See Agilysys,* 258 F. Supp. 3d at 1352 ("Plaintiff has failed to allege facts to support the interference with any specific contracts. As a result, any claim based on a tortious interference with contracts is dismissed."); *Collier v. Synergy Corp. Servs., Inc.*, 1:21-CV-00649-SDG-RGV, 2022 WL 22865244, at *7 n.8 (N.D. Ga. Mar. 22, 2022) (dismissing claim for tortious interference with contracts where plaintiff failed to allege that any valid contracts existed); *see also Griffin*, 350 Ga. App. 694, 697 ("To recover under a theory of tortious interference with contractual relations, Griffin must show 'the existence of a valid contract . . .'").

Here, Plaintiff does not allege facts supporting the existence of any valid contract to make, sell or distribute the Adams Insert in the FAC. Rather, the FAC only alludes vaguely to "valid and enforceable contracts" with unidentified "end-user customers of the Adams Insert." (*See* FAC ¶ 30.) A general reference to "valid and enforceable contracts" – without identifying a specific interfered-with contract, or even any facts supporting an inference that such a contract exists – constitutes an

insufficient "formulaic recitation" of an essential element of a contractual interference claim. *See Twombly*, 550 U.S. at 555.[2]

Having failed to plead the *existence* of a specific contract, the FAC does not (and cannot possibly) plead facts supporting an inference that Hasbro *interfered with* such a contract. *See Agilysys*, 258 F. Supp. 3d at 1352; *Collier*, 2022 WL 22865244, at *7 n.8. In the absence of these essential elements, Count I must be dismissed. *See Agilysys*, 258 F. Supp. 3d at 1352; *Collier*, 2022 WL 22865244, at *7 n.8.

### 2. The business relationship element of a claim for tortious interference with business relationships is insufficiently pled.

Plaintiff's claim for tortious interference with business relations suffers from a similar defect. "An essential element of a tortious interference with business relations claim 'is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the plaintiff.'" *Sweet City Landfill*, 352 Ga. App. at 834. Although a business relations interference claim need not specifically identify a third party at the pleading stage, it "must offer at least some

---

[2]    The requirement that a plaintiff plead interference with a specific contract is not a negligible formality. It is critical because it provides the "additional element" that saves claims of tortious interference with contract from being preempted by federal copyright law. *See e.g.*, *Telecom Technical Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 833 (11th Cir. 2004) ("[T]he tortious interference claim involves an additional element. The tortious interference claim requires Siemens to demonstrate that the ISOs violated the terms of Siemens's software license for third parties, which is an element beyond federal copyright law . . . ."). Because Adams has not alleged the existence of, or Hasbro's interference with, any particular contract, his claim for tortious interference with contract is preempted as discussed *infra*, 22 n.7.

factual, nonconclusory allegations regarding the loss of existing or prospective clients." *FTI Consulting, Inc. v. Secretariat Advisors, LLC*, No. 1:24-CV-1356-TWT, 2025 WL 756024, at *7 (N.D. Ga. Mar. 7, 2025); *see also USI Ins. Servs*, 2021 WL 912258, at *6 ("[I]n the absence of Lockton identifying a single client lost, Lockton has failed to state a claim for tortious interference with business relations.").

Plaintiff merely asserts, in conclusory fashion, that Hasbro allegedly "disrupted or terminated" certain unspecified "business relations and economic opportunities" in some unspecified way (FAC ¶ 35.) "With respect to a loss of existing or future business relations, [such] general allegations are not sufficient to survive a motion to dismiss." *FTI Consulting*, 2025 WL 756024, at *7 (dismissing a business interference claim for which the plaintiff alleged resultant disruption "with the forecast revenues from customers and employees who were the targets of the interference alleged"). Generalized claims for the "loss of 'potential' business [are] not enough." *Id.* Plaintiff alleges no supporting facts regarding the loss of any business relationship—or even the loss of any sale—due to Hasbro's alleged conduct. Nor does the FAC point to a single existing or prospective customer that allegedly chose not to enter into or continue a business relationship due to Hasbro's alleged actions. *See Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1347 & n.19 (N.D. Ga. 2007) (noting the court "would be inclined" to deny the tortious interference claim because the plaintiff could not "point to a single

10

individual that was induced not to enter into or continue a business relationship"). As such, the FAC fails to state a claim for tortious interference with business relations.

Given his failure to identify a single interfered-with contract or relationship, Plaintiff inevitably fails to plausibly allege that Hasbro was a stranger to those contracts or relationships, or that Hasbro induced disruption of the contracts or relationships. Each of these, too, is an essential element of any claim for tortious interference. *See, e.g.*, *Gordon Document Prods.*, 308 Ga. App. at 449; *Kellett*, 368 Ga. App. at 695. The lack of each critical element constitutes an additional, independent ground for dismissal.

## B. Plaintiff Fails to Adequately Plead That Hasbro Acted with Malice.

The FAC fails to allege any malice on Hasbro's part, as required to make out a claim for tortious interference. To allege malice, a plaintiff must show an "unauthorized interference, or any interference without legal justification or excuse." *Elavon, Inc. v. Wachovia Bank, Nat'l Ass'n,* No. 1:09-CV-0139-ODE, 2009 WL 10699138, at *4 (N.D. Ga. Oct. 13, 2009). Although "personal ill will" or "animosity" is not essential to show malice, "unsupported inferences or conjecture regarding a defendant's motivation" do not suffice to plead this element. *Id.* (internal punctuation omitted); *see also 800 Mktg. Sols., Inc. v. GMAC Ins. Mgmt. Corp.*, No. 3:06-CV-038 (CDL), 2008 WL 2777140, at *8 (M.D. Ga. July 14, 2008).

Here, in claiming that Hasbro wrongfully copied the Adams Insert without permission (FAC ¶ 17), the FAC baldly asserts that Hasbro's actions were "wrongful, malicious and without legal justification." (*Id.* ¶ 34.) Such conclusory statements and speculation as to Hasbro's motivations are not enough. *See Elavon*, 2009 WL 10699138, at *2 (dismissing plaintiff's claim for tortious interference in part because it did not allege any facts indicating malice and instead only propounded "speculation regarding [the defendant's] motivations."); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Count II should be dismissed on these grounds as well.

### C. Plaintiff Fails to Adequately Plead that Hasbro's Alleged Conduct Was the Proximate Cause of Any Alleged Harm.

Equally fatal to Plaintiff's tortious interference claim, the FAC is devoid of factual support for any allegation that Plaintiff suffered actual harm as the proximate result of Hasbro's alleged conduct. "For a tortious interference claim, a plaintiff must show that 'the defendant's tortious conduct proximately caused damage to the plaintiff." *FTI Consulting*, 2025 WL 756024, at *7 (addressing motion to dismiss) (quoting *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 322 Ga. App. 596, 598–99 (2013)). "[I]f a plaintiff cannot show that damage to his rights or obligations under a contract proximately resulted from the third party's alleged interference, his claim

for tortious interference fails as a matter of law." *Tribeca Homes*, 322 Ga. App. at 598; *see also Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832 (2008) ("any damage claimed to have been suffered by a plaintiff does not proximately result from the defendants' alleged misconduct, if the damage would have occurred notwithstanding their misconduct.").

Under Count II, any allegations regarding harm and causation are generalized, conclusory and speculative, at best. Plaintiff merely asserts that, as a "proximate result of" Hasbro's alleged actions, certain unidentified "business relations and economic opportunities with [Plantiff's] end-users were disrupted or terminated" in some way (FAC ¶ 35), allegedly causing Plaintiff damages "including, but not limited to, (a) lost profits and revenues; (b) loss of business goodwill; [and] (c) harm to Plaintiff's reputation" (*id.* ¶ 36). But the FAC is devoid of any facts indicating that the Accused Helmets have impacted Plaintiff's reputation, goodwill or sales of the Adams Insert.[3] *See Duke Galish*, 291 Ga. App. at 832. Rather, Plaintiff's recitation as to causation is "conclusory [and] unsupported by factual content" (*see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555), and thus insufficient "to raise a

---

[3] Nor could he do so by amendment. Plaintiff offers the Adams Insert as a stand-alone product for incorporation into fan-made helmets, selling it to hobbyists via social media or Etsy. (*See* FAC ¶ 6.) Hasbro sells a very different product—complete helmets—to retailers and consumers on a global scale, via more traditional channels of commerce. (*See id.* ¶ 17.) Nothing suggests that the Accused Helmets affect sales of the Adams Insert or otherwise impact Plaintiff's business or reputation at all.

right to relief above the speculative level" (*Twombly*, 550 U.S. at 555). *See also FTI Consulting*, 2025 WL 756024, at *7 (holding that generalized allegations that plaintiff would lose existing or future business relations were insufficient to survive a motion to dismiss).

## III.    THE FAC FAILS TO STATE A CLAIM FOR RELIEF UNDER COUNT III BECAUSE IT DOES NOT SUFFICIENTLY ALLEGE A LIKELIHOOD OF CONFUSION

Plaintiff purports to bring a claim under section 10-1-372(a) of the GUDTPA, which provides, in pertinent part, that "[a] person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services . . . or [e]ngages in other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. §§ 10-1-372(a)(2), (12). (*See* FAC ¶ 39 (quoting subsections 372(a)(2) and (12) without direct citation.)) The "essence" of such a claim "is that a defendant's actions have caused a 'likelihood of confusion'" among consumers. *Computer Currents Pub. Corp. v. Jaye Commc'ns, Inc.*, 968 F. Supp. 684, 687 (N.D. Ga. 1997).[4]

---

[4]    In assessing claims under O.C.G.A. § 10-1-372, courts in the Eleventh Circuit generally apply "the same 'likelihood of confusion' analysis found in trademark-infringement claims under the Lanham Act." *See, e.g., ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp. 2d 1309, 1327 (N.D. Ga. 2013); *OnAxis Franchising Group, LLC v. Harod*, 1:23-CV-4835-MHC, 2024 WL 4525524, at *13 (Feb. 9, 2024, N.D. Ga). Here, however, Plaintiff does not claim trademark infringement or assert any trademark rights in connection with the Adams Insert. Hasbro expressly reserves the

To survive a motion to dismiss, a GUDTPA claim "must contain well-pleaded factual allegations" that the defendant acted "in commerce in connection with the sale or advertising of goods or services . . . in a manner likely to confuse consumers." *See OnAxis Franchising Grp., LLC v. Harod*, No. 1:23-CV-4835-MHC, 2024 WL 4525524, at *13 (N.D. Ga. Feb. 9, 2024); *see also id.* at *14 (dismissing a claim under GUDTPA because "the allegations in the Complaint fail to allege sufficient facts which could establish a likelihood of confusion").

Here, Plaintiff makes only an indirect and cursory attempt to plead the requisite likelihood of confusion under Count III. The FAC offers the conclusory statement that "Defendant's actions in Paragraphs 14–20 of [the FAC] . . . caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification" of Hasbro's product. (FAC ¶ 40.) The effort fails because, in fact, Paragraphs 14–20 do not plausibly support such an inference. They contain allegations that:

- a portion of the interior of the Accused Helmets bears "similarities" to the Adams Insert (*id.* ¶ 14);

- Hasbro "had access to and was aware of the existence of, the Adams Insert" (*id.* ¶ 15 ("upon information and belief"));

---

right to argue on summary judgment that, as a matter of law, Plaintiff fails to establish a protectable interest in the Adams Insert for purposes of O.C.G.A. § 10-1-372(a)(2) and/or (12).

- "Plaintiff has not authorized Defendant to use or reproduce the Adams Insert" (*id.* ¶ 16);

- Hasbro has and continues to reproduce and create derivations of the Adams insert (*id.* ¶ 17 ("upon information and belief"));

- Adams sent a notice of alleged infringement to Hasbro on or around October 5, 2023 (*id.* ¶ 18);

- Hasbro has continued to use the allegedly infringing helmet lining, thereby allegedly committing "willful and intentional" copyright infringement (*id.* ¶ 19); and

- "Defendant has neither sought, nor obtained, a license from Plaintiff" (*id.* ¶ 20).

(*Id.* ¶¶ 14–20; *see also id.* at ¶ 20 (concluding summarily that "[a]ll conditions precedent to the maintenance and/or establishment of this action have been satisfied and/or have otherwise been waived by the Defendant.")).

Taken together, these allegations hardly raise a reasonable inference that Hasbro has acted "in a manner likely to confuse consumers" with respect to the Adams Insert. *See OnAxis Franchising Grp.*, 2024 WL 4525524, at *14 (rejecting plaintiff's argument that likelihood of confusion was sufficiently pled, despite plaintiff's factual allegations that defendants used plaintiff's mark in advertising when they continued to operate webpages after termination of the parties' franchise agreement; that customer reviews referencing defendants "confuse[d] potential purchasers"; and that defendants had only "compound[ed] the likely confusion" by noting that certain reviews were received under a previous company name). Plaintiff's bare conclusion in Paragraph 40 of the FAC is equally insufficient. *See*

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."). Count III should be dismissed on this basis. *See OnAxis Franchising*, 2024 WL 4525524, at *14; *see also ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 953 (N.D. Ill. 2016) (dismissing claim under Illinois Uniform Deceptive Trade Practices Act where plaintiff failed to allege a likelihood of confusion between the plaintiff's services and the defendant's services).

Thus, Plaintiff has not alleged, and cannot allege, a likelihood of confusion and his claim for violation of the GUDTPA must be dismissed with prejudice.

## IV.    COUNTS II AND III ARE PREEMPTED BY COPYRIGHT LAW.

Courts in Georgia and elsewhere routinely hold that state-law claims based on allegations that the defendant copied the plaintiff's product or that the defendant attempted to pass the plaintiff's product off as its own (so-called "reversing passing-off claims")[5] are preempted by federal law. This includes claims under the Uniform Deceptive Trade Practices Act ("UDTPA") as adopted by various states, as well as claims for tortious interference with business relations. Indeed, Plaintiff's claims for tortious interference and violation of the GUDTPA are paradigmatic examples of

---

[5]    *See, e.g.*, *Duer v. Bensussen Deutsch & Associates, Inc.*, 1:14-CV-01589-ELR, 2015 WL 11256568, at *6 (N.D. Ga. July 8, 2015).

such claims, and should both be dismissed on the separate basis that they are preempted by federal copyright law.

A state-law claim is preempted by federal copyright law if (1) "the rights at issue fall within the 'subject matter of copyright' set forth in [17 U.S.C.] sections 102 and 103" and (2) "the rights at issue are 'equivalent to' the exclusive rights of [17 U.S.C.] section 106." *Crow*, 720 F.2d at 1225, 1226.

At the second step of this analysis, courts in the Eleventh Circuit "appl[y] an 'extra element' test to determine whether a plaintiff's state law claims are qualitatively different from violations of the bundle of copyright rights protected by 17 U.S.C. § 106." *Fuss v. Bensch*, 601 F. Supp. 3d 1329, 1333 (N.D. Ga. 2022) (citing *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001)); *see also Priority Payment Sys., LLC v. Signapay, Ltd.*, 161 F. Supp. 3d 1285, 1292 (N.D. Ga. 2015) ("[i]n evaluating the second prong, courts ask whether the state law claim has 'extra elements' that make it qualitatively different from a copyright infringement claim.").

### A. Counts II and III both fall within the subject matter of copyright.

Plaintiff alleges that he is the holder of the exclusive copyright for the Adams Insert, which is registered with the U.S. Copyright Office as a "Sculpture." (FAC ¶¶ 12–13, Ex. B.) Accordingly, Counts II and III fall within the subject matter of copyright for purposes of the preemption analysis because they are based on the alleged copying of the Adams Insert. *See* 17 U.S.C. § 102(a)(5) (providing for

copyright protection for "pictorial, graphic, and sculptural works"); *see also, e.g.*, *Fuss*, 601 F. Supp. 3d at 1339 (concluding that a graphic work subject to Section 102 satisfied the first prong of the copyright preemption analysis).

**B. Plaintiff's Claim for Violation of the GUDTPA Is Preempted.**

At the second step of the preemption analysis, the rights at issue with respect to Plaintiff's claim for violation of the GUDTPA are equivalent to those exclusively subject to 17. U.S.C. § 106. Therefore, Plaintiff's claim is preempted.

As relevant here, Section 106 protects the right to reproduce a copyrighted work, prepare derivative works based on a copyrighted work, and distribute copies of a copyrighted work to the public. 17 U.S.C. § 106(1)–(3).

Courts interpreting GUDTPA consistently hold that allegations that a product was copied and that consumers were confused, without more, do not contain an "extra element" beyond those addressed by Section 106 and are thus preempted. *See Duer v. Bensussen Deutsch & Associates, Inc.*, 1:14-CV-01589-ELR, 2015 WL 11256568, at *6 (N.D. Ga. July 8, 2015) (GUDTPA claim based on allegations that "Defendants took Plaintiff's intellectual property and represented to the public that the actual product was Defendants[']" by incorporating it into their own product was preempted by federal copyright law because it involved no extra element); *CallRail, Inc. v. PhoneWagon Inc.*, No. 1:18-CV-02207-AT, 2020 WL 11191832, at *2 (N.D.

Ga. Jan. 24, 2020) (GUDTPA claim based on allegations that defendant copied plaintiff's software was preempted as it did not require an "extra element").

Courts interpreting parallel UDTPA statutes reach the same result. *See, e.g.*, *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 999 (N.D. Ill. 2011) (dismissing Illinois UDTPA claim because "allegations [that] derive from nothing more than 'the inherent misrepresentation that accompanies the unauthorized copying and distribution of another's copyrighted work,' [are] simply 'not enough' to avoid preemption") (quoting *Cyber Websmith, Inc. v. Am. Dental Ass'n*, No. 09–CV–6198, 2010 WL 3075726, at *3 (N.D. Ill. Aug. 4, 2010)); *accord Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 950 F. Supp. 896, 898 (C.D. Ill. 1997).[6]

To support his GUDTPA claim, Plaintiff pleads (in conclusory fashion) that the Accused Liner is copied from the Adams Insert and causes a possibility of consumer confusion. (*See* FAC ¶¶ 14–20, 39.) These allegations do not allege an "extra element" beyond those activities governed by 17 U.S.C. § 106. *See, e.g.*, *Duer*, 2015 WL 11256568, at *6. Accordingly, Plaintiff's GUDTPA claim is preempted by the Copyright Act and should be dismissed.

---

[6]    The relevant portions of the Illinois and Georgia UDTPA statutes are identical in substance. *Compare* 815 Ill. Comp. Stat. Ann. 510/2(a)(2), (12), *with* O.C.G.A. § 10-1-371(a)(2), (12).

**C. Plaintiff's Claim for Tortious Interference with Business Relations Is Preempted.**

Plaintiff's claim for tortious interference with business relations is likewise preempted because the rights at issue are equivalent to those under 17 U.S.C. § 106.

As with the GUDTPA, courts in Georgia and elsewhere hold that a claim for tortious interference with business relations that does not allege an extra element beyond copying and a likelihood of consumer confusion or loss of business is preempted by federal copyright law. *See, e.g.*, *Duer*, 2015 WL 11256568, at *6 (allegations that defendants copied Plaintiff's product, thereby confusing consumers, did not allege extra element and therefore were preempted by federal copyright law); *see also Balsamo*, 950 F. Supp. at 899 (claim for interference with prospective economic advantage based on allegations that defendants copied plaintiff's product did not involve extra element and was preempted).

In support of his tortious interference claim, Plaintiff alleges (again, in conclusory fashion) that Hasbro wrongfully copied the Adams Insert and sold products including those copies, and that this has interfered with Plaintiff's business relations. (*See* FAC ¶¶ 29–37.) These allegations do not involve an extra element beyond the copying and distribution addressed by 17 U.S.C. § 106 and, accordingly,

Plaintiff's claim for tortious interference with business relations is preempted. *See, e.g.*, *Duer*, 2015 WL 11256568, at *6.[7]

## CONCLUSION

Based on the foregoing, Hasbro, Inc. respectfully requests that Count II and Count III of Plaintiff's First Amended Complaint each be dismissed with prejudice.

Respectfully submitted this 20th day of January, 2026

**HOLLAND & KNIGHT LLP**

/s/   Nicholas R. Boyd
Nicholas R. Boyd
Georgia Bar No. 849842
Talis C. Trevino
Georgia Bar No. 181896
1180 W. Peachtree St., N.W., Suite 1800
Atlanta, Georgia 30309
Telephone: (404) 817-8500
Fax: (404) 881-0470
nicholas.boyd@hklaw.com
talis.trevino@hklaw.com

Courtney L. Batliner
Massachusetts Bar No. 678474
*(Pro Hac Vice Forthcoming)*
10 St. James Avenue, 11th Floor

---

[7]    As discussed *supra*, 9 n.2, claims for tortious interference with contractual relations (unlike tortious interference with business relations) can survive preemption because the requirement that the plaintiff demonstrate interference with a specific contract is an "extra element." *See Telecom Technical Servs.*, 388 F.3d at 833. Here, however, Plaintiff has failed to plead any specific contract with which Hasbro allegedly interfered. In the absence of that critical element—the only one that would save the claim of tortious interference with contract from preemption—Plaintiff fails to state a claim at all.

Boston, Massachusetts 02116
Courtney.Batliner@hklaw.com

*Counsel for Defendant Hasbro, Inc.*

## FONT AND POINT CERTIFICATION

Pursuant to Northern District of Georgia Local Rule 7.1(D), the Undersigned counsel for Defendant certifies that the within and foregoing Defendant Hasbro, Inc.'s **BRIEF IN SUPPORT OF DEFENDANT HASBRO, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with Local Rule 5.l(B).

Respectfully submitted this 20th day of January, 2026.

**HOLLAND & KNIGHT LLP**

*/s/   Nicholas R. Boyd*
Nicholas R. Boyd

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I served a true and correct copy of the within

and foregoing Defendant Hasbro, Inc.'s **BRIEF IN SUPPORT OF DEFENDANT**

**HASBRO, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST**

**AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system,

which will automatically send e-mail notification of such filing to the following

Counsel of Record:

>       Steven B. Becker
>       Becker Law LLC
>       One West Court Square, Suite 750
>       Decatur, GA 30030
>       E-Mail: sbecker@beckerlawllc.com

This 20th day of January 2026

>                               /s/   Nicholas R. Boyd
>                               Nicholas R. Boyd